**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **HAROLD R. BERK, individually and on behalf** | : | |
| **of a class similarly situated** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO. 11-2715** |
| **vs.** | : | |
| | : | |
| **J.P. MORGAN CHASE BANK, N.A.,** | : | |
| **J.P. MORGAN CHASE & CO.,** | : | |
| **CHASE AUTO FINANCE CORPORATION,** | : | |
| **ACCOUNTS RECEIVABLE** | : | |
| **MANAGEMENT, INC.,** | : | |
| | : | |
| **Defendants** | : | |

**AMENDED CIVIL COMPLAINT- CLASS ACTION**

### Introduction

1.      This is an action under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et

seq. ("FDCPA") and the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. §§1962 and

1964, regarding the actions of defendants  J.P. Morgan Chase & Co., J.P. Morgan Chase Bank,

N.A., Chase Auto Finance Corp. and Accounts Receivable Management, Inc. in joining together

in a conspiracy to repeatedly contact plaintiff, on approximately twenty (20) or more separate

occasions over a period of two years, at three separate residences and on four separate telephone

lines, concerning  a supposed auto loan obtained by plaintiff's former wife after their divorce in

1998 and on which plaintiff is not obligated, and where the former wife's residence address is

and has been known to the defendants at all times relevant herein, and where on each occasion

plaintiff told defendants that he had no knowledge whatsoever of any of the matters concerning

which they repeatedly called.   Plaintiff asked defendants to cease their calls about the auto loan

of which he had no knowledge, but they persisted in order to harass and intimidate plaintiff.

After many such repeated calls by defendants, Plaintiff told defendants on five separate

occasions that if they did not cease calling Bout his former wife's auto loan, he would report the

matter to the United States Attorney for the Eastern District of Pennsylvania.   When defendants

continued to call, plaintiff did, on February 26, 2011, write to the United States Attorney, with a

copy to the General Counsel of Chase Co and Chase Bank, detailing the telephonic harassment

by defendants and their repeated violation of the Fair Debt Collection Practices Act by

repeatedly calling non-debtor plaintiff.   ARM, a debt collector, claimed it was "Chase Auto

Loans" every time it called plaintiff, and it did so, with Chase's knowledge and in a conspiracy

by Chase and ARM to conceal ARM's true identity, in order to avoid the limitations of the

FDCPA, which applies to debt collectors but not creditors, in order to increase the auto loan

collections of defendants.   Despite the letter to the United States Attorney and a request to Chase

to cease and desist from a member of the Board of Directors of Chase Co., an employee of Chase

Bank, who said he was acting at the specific direction of the General Counsel of Chase Bank and

Chase Co., called plaintiff on March 7, 2011, at approximately 4:30 p.m., and again demanded

information about plaintiff's former wife's supposed auto loan.   Defendants have never

confirmed that plaintiff's former wife actually had an auto loan with Chase Bank.  On each call

by defendants, when plaintiff asked the defendants' to identify themselves and their actual

business and address, the defendants' representative hung up the phone and refused to provide

the information.  Defendants' calls to plaintiff were part of their conspiracy to contact the class

of non-debtors to harass them about auto loans made by borrowers from Chase in order to cause

the non-debtors to contact the Chase borrower in order to increase defendants' auto loan collections.

## **JURISDICTION**

2.     Plaintiff Harold R. Berk is an adult individual who resides at 1041 Glendevon Drive, Ambler, Pennsylvania 19002, and he is a citizen of the Commonwealth of Pennsylvania. Plaintiff is a licensed attorney admitted to practice in Pennsylvania and is a member of the bar of this Court.

3.     Defendant J.P. Morgan Chase Bank, N.A. (hereafter "Chase Bank") is a national banking association organized under the laws of the United States and maintains its principal offices at 270 Park Avenue, New York, New York 10017.

4.     Defendant J.P. Morgan Chase & Co. is a Delaware corporation which maintains its principal offices at 270 Park Avenue, New York, New York 10017 (hereafter "Chase Co").

5.     Defendant Chase Auto Finance Corporation is a Delaware corporation with principal offices at 270 Park Avenue, New York, New York 10017 (hereafter Chase Auto Finance."). (Chase Bank, Chase Co, and Chase Auto Finance will be sometimes collectively referred to herein as "Chase").

6.     Defendant Accounts Receivable Management, Inc. is a New Jersey corporation with its principal offices at 155 Mid-Atlantic Parkway, Thorofare New Jersey 08086 (hereafter "ARM").

7.     Chase and ARM have operated together in a conspiracy, constituting a racketeering organization, known as "Chase Auto Loans" in order to falsely represent ARM, in telephonic communications to non-debtors of Chase, as a creditor entitled to exemption under the FDCPA so that it could harass the class of non-debtors in order to secure payments by borrowers

- 3 -

of Chase auto loans by making many more than the one call to non-debtors, the maximum

allowed by the FDCPA, in order to  increase the collection of defendants' auto loans, which

increased collections result from the conspiracy by Chase and ARM to commit wire fraud.

8.      The Court has jurisdiction of this action under 28 U.S.C. §1331 as this an action

under laws of the United States, particularly the Fair Debt Collection Practices Act and the

Racketeer Influenced and Corrupt Organizations Act.

9.      Jurisdiction is also granted to this Court over this action under 28 U.S.C. §1332 as

it is between citizens of different states where the amount in controversy exceeds the sum or

value of seventy-five thousand dollars, exclusive of interest and costs.

10.     Jurisdiction is also conferred on this Court under 18 U.S. C. §1964(a) granting

jurisdiction to prevent and restrain violations of 18 U.S.C. §1962, including using interstate

telecommunications facilities to extract money by fraud and intimidation violating the wire fraud

statute, 18 U.S.C. §1343, and using the proceeds of those criminal activities to build and operate

a criminal enterprise or racketeering organization.

11.     Jurisdiction is also conferred on this Court under 18 U.S.C. §1964(c) in an action

by any person injured in his business or property by reason of a violation of 18 U.S.C. §1962,

and pursuant to which such injured person may shall recover threefold the damages he sustains

and the cost of the suit, including a reasonable attorney's fee.

12.     This court has venue over this action as plaintiff is a resident of Pennsylvania and

of the Eastern District, and the telephone calls from ARM and Chase were made to him by

defendants to his residences and offices in Pennsylvania.

## **FACTS**

13.     Plaintiff Harold R. Berk is an attorney who was formerly married to Nancy K. Berk, from whom he has been divorced by a final decree of divorce, dated August 11, 1998, issued by a Judge of the Court of Common Pleas of Philadelphia County.

14.      Since February, 1997 plaintiff has not resided with Nancy K. Berk, and he is and has not been not familiar with her financial affairs nor does he have any interest or reason to be aware of her financial affairs.

15.     Plaintiff is not a party to and is not obligated under any auto loan that his former wife may have entered with defendants, and if such a loan exists, he has no knowledge of its terms or conditions or payment status.  If any such auto loan exists, it would be a consumer loan subject to the FDCPA.

16.     Commencing in 2009, plaintiff started receiving telephone calls from persons identifying themselves as "Chase Auto Loans" concerning an auto loan allegedly taken out by one Nancy Berk.  During each telephone call, plaintiff advised the caller from Chase Auto Loans that he had been divorced from Nancy Berk since 1998, and he had no knowledge of any auto loan she might owe.

17.     Nancy Berk, plaintiff's former wife, has lived at 9506 Wheelpump Lane, Philadelphia, Pennsylvania 19119 since April, 1992 when plaintiff and Nancy Berk purchased the house together.  When plaintiff wrote to his former wife notifying her of the filing of the Civil Complaint herein, the United States Postal Service gave him notice that she had moved to another location the address for which it provided to plaintiff.

18.     Despite plaintiff's lack of knowledge of Nancy Berk's auto loans or financial affairs, plaintiff continued to receive numerous harassing telephone calls during 2009, 2010 and 2011 from interstate telephone callers identifying themselves as "Chase Auto Loans."

19.     The telephone calls made to plaintiff by people calling themselves Chase Auto Loans were made to plaintiff's residence in Blue Bell, Pennsylvania during 2009 and until he moved from that residence to his current residence in February, 2010.

20.     When plaintiff moved to his current residence in February, 2010, he obtained a different telephone number than the one at the Blue Bell residence.

21.     Despite the fact that plaintiff moved his residence and had a new telephone number, plaintiff continued to receive calls from Chase Auto Loans in 2010 and 2011 at his current residence in Horsham Township, Pennsylvania.  Plaintiff has also received telephone calls from Chase Auto Loans on his cell phone, as confirmed by the General Counsel of Chase Auto Finance.

22.     The telephone calls from Chase Auto Loans intensified in number in 2010 and 2011 after plaintiff moved to his current residence.

23.     Plaintiff estimates that he received about 5 telephone calls from Chase Auto Loans concerning the supposed Nancy Berk loan in 2009.

24.     Plaintiff estimates that he received about 20 telephone calls from Chase Auto Loans concerning the supposed Nancy Berk loan in 2010.

25.     Plaintiff estimates that he received about 5 telephone calls from Chase Auto Loans concerning the supposed Nancy Berk loan in 2011.  After plaintiff receives answer to discovery from defendants identifying the telephone numbers from which they called plaintiff,

he will obtain the telephone records maintained by Verizon to document all calls made by defendants to plaintiff.

26.     During each call from Chase Auto Loans, plaintiff advised Chase Auto Loans, again and again, that he had been divorced from Nancy Berk since 1998 and had no knowledge of her auto loans.

27.     The representatives of Chase Auto Loans never asked plaintiff for the location or whereabouts of Nancy Berk.

28.     Plaintiff was married to Marian Tracey in May, 2005 and he moved into her house in Huntingdon Valley, Pennsylvania.   Plaintiff had an office there with an office telephone number, but at all times the telephone at the Tracey residence was in the name of Marian Tracey.   Plaintiff initiated divorce proceedings from Marian Tracey in 2007, and he moved from her residence in July, 2007.  That divorce was finalized by a Decree of Divorce on May 1, 2009.

29.     During 2009 and 2010, Marian Tracey received several telephone calls from Chase Auto Loans inquiring about a supposed auto loan of Nancy Berk.  During each call, Marian Tracey notified Chase Auto Loans that she was divorced from plaintiff and had no knowledge of any auto loan taken out by his former wife, Nancy Berk.

30.     Marian Tracey became quite angry and irate over the repeated telephone calls to her by Chase Auto Loans made in 2009 and in 2010, and she demanded that plaintiff cause Chase Auto Loans to stop the calls to her.  Needless to say a former wife gets angry and upset when repeatedly contacted by a supposed creditor of her former husband's former wife.

31.     Plaintiff advised Marian Tracey that he was also receiving repeated calls from Chase Auto Loans, and despite his lack of knowledge of the alleged debt, they continued to call

him.  Plaintiff expressed doubt that he could cause Chase Auto Loans to stop calling Tracey

since he was not able to get Chase Auto Loans to stop calling him.

32.    Tracey called plaintiff on several occasions in late 2009 and in 2010 saying she

was getting more and more furious at the repeated harassment she was receiving from Chase

Auto Loans concerning the supposed auto loan of Nancy Berk, and each time she demanded that

plaintiff cause Chase to stop calling her.

33.    Plaintiff's divorce from Nancy Berk was not amicable, and over the years Nancy

Berk made more and more financial demands for alimony assistance from plaintiff, and she also

worked hard to alienate plaintiff's only daughter, Miriam K. Berk from him.  As a result,

plaintiff did not want to hear anything about Nancy Berk or her business, and as Chase Auto

Loans continued the repeated telephone calls and harassment of plaintiff he would become

angry, irate and upset and his blood pressure would rise to high levels whenever he received calls

from Chase Auto Loans about the supposed auto loan of Nancy Berk.

34.    Plaintiff has atrial fibrillation, and the stress and tension induced by the repeated

calls from Chase Auto Loans concerning the supposed Nancy Berk loan adversely affected his

heart condition and caused him great stress and discomfort and interfered with his ability to

work.

35.    Plaintiff requested the Chase Auto Loan callers to provide their names, addresses

and contact information and the identity of the business organization on whose behalf they

called, but every time that information was requested, the Chase Auto Loan caller hung up the

phone without providing any information.

36.    Starting in about November, 2010, whenever plaintiff received a call from Chase

Auto Loans about the supposed Nancy Berk loan, plaintiff became upset but told the

representatives of Chase Auto Loans that if they called him one more time, he would contact the

United States Attorney concerning their harassment, intimidation, invasion of privacy and

violation of the Fair Debt Collection Practices Act and other federal statutes.

37.    On February 26, 2011 at around 10:00 a.m. a person called plaintiff identifying

themselves as calling from Chase Auto Loans and questioned plaintiff about an auto loan of

Nancy Berk, and plaintiff demanded the address and contact information for the caller so that he

could send a complaint to the United States Attorney as he had promised to do before.  Plaintiff

was not provided any address or contact information and the caller from Chase Auto Loans hung

up the phone without providing any of the requested contact information.

38.    Plaintiff immediately thereafter sent a letter to Zane David Memeger, Esquire, the

United States Attorney for the Eastern District of Pennsylvania, advising him of the repeated

unauthorized telephone calls made to plaintiff by Chase Auto Loans regarding a supposed loan

of his former wife, Nancy Berk.  The letter advised that the Chase Auto loan caller on February

26, 2011used the telephone number:  866-932-6711.  Plaintiff told the United States Attorney in

the letter that the calls may be placed by a collection agency but they always identified

themselves as Chase Auto Loans and not a debt collector.   A copy of the letter is attached hereto

as Exhibit A and incorporated herein by reference.

39.    Plaintiff sent open copies of the Memeger letter to Chase Auto Finance in

Louisville, Kentucky at an address he found on the Internet, to Stephen M. Cutler, Esquire,

General Counsel of Chase Co. and Chase Bank at his office on Park Avenue in New York City

and to Elizabeth Barry, Head of Retail Banking for Chase Bank.

40.    Plaintiff sent a copy of his letter to Mr. Memeger to his cousin, James S. Crown,

who was and is a member of the Board of Directors of Chase Co., and he provided him with

information concerning the repeated telephone calls by Chase Auto Loans.  Mr. Crown stated in an email to plaintiff on March 4, 2011 that he would contact Chase on behalf of plaintiff to cause the calls to cease.

41.     On March 7, 2011 at about 4:30 p.m., plaintiff received a call from a Jack Russell, who identified himself as a representative of Chase and began to grill plaintiff about the auto loan taken out by his former wife. As in all other telephone calls from Chase, plaintiff told Mr. Russell that he had no information about any auto loan taken out by his former wife, Nancy Berk.  Mr. Russell then demanded an address for Nancy Berk, and plaintiff told him that to his knowledge she lives at the same address as she had lived since April, 1992 when they bought the house together, which house plaintiff deeded to his wife as part of the divorce settlement, and that address was 9506 Wheelpump Lane, Philadelphia, PA 19118.

42.     Plaintiff told Mr. Russell that he was surprised by his telephone call since plaintiff had sent a letter to the United States Attorney complaining about the repeated telephone calls from Chase Auto Loans, and he had copied several Chase offices and senior officers with that letter, including Stephen M. Cutler, Esquire, the General Counsel of J.P. Morgan Chase & Co. Mr. Russell advised plaintiff that his call to plaintiff to inquire about the supposed auto loan was made at the specific direction of Mr. Cutler, the General Counsel of Chase Co. and Chase Bank, and Mr. Cutler was acting as an authorized officer of Chase Co. and Chase Bank in directing the call be made to plaintiff despite the repeated earlier calls, and Mr. Cutler gave that directive despite his knowledge of the contents of plaintiff's letter to the United States Attorney concerning the repeated and harassing telephone calls that had been made to plaintiff by defendants.

43.     Mr. Russell, on behalf of Chase Co. and Chase Bank and their General Counsel, then stated that he had 20 Nancy Berks on his list and he did not know whether plaintiff's former wife was the person who owed a Chase auto loan.

44.     Plaintiff sent a letter to Stephen Cutler, General Counsel of Chase Co. and Chase Bank, dated March 14, 2011, in which he recounted the call from Mr. Russell made on behalf and at the direction of Mr. Cutler, in which Mr. Russell sought information about the supposed auto loan of Nancy Berk and her present location, though Mr. Russell did not know whether plaintiff's former wife was their auto loan borrower.  The letter to Cutler repeated some of the allegations of this Complaint as set forth above.  The Cutler letter is attached hereto as Exhibit B and incorporated herein by reference.  Cutler never responded to plaintiff's letter, Exhibit B, and he never denied Russell's statement that Russell called me about the Nancy Berk auto loan at the specific direction of Cutler.

45.     The Cutler letter also included a reference to a letter, dated March 3, 2011, sent by Michon Suter, Executive Specialist, Chase Auto Finance Executive Office of J.P. Morgan Chase Bank, N.A. stating that they had conducted an investigation of my complaint to the U.S. Attorney:

> In response to her (sic) correspondence I have thoroughly reviewed our records and have found that your phone number was erroneously associated with a Chase Auto Finance account. Please be assured that your phone number has been removed from our records and you should no longer receive any calls from Chase Auto Finance. …
>
> Your letter refers to interactions with our representatives which are not in keeping with our service standards. We have conducted a review of your claims and do not find any indication that our representatives did not comply with our policies and procedures.
>
> …

> We hope your questions and concerns have been answered, as we believe
> that a full review of these concerns has been conducted.

The Suter letter is attached hereto as Exhibit C and incorporated herein by reference.

46.     The Suter letter makes no reference to any debt collector acting on behalf of Chase, but rather, it clearly states that Chase personnel made the telephone calls to plaintiff but they would now cease and "you should no longer receive any telephone calls from Chase Auto Finance."  Since Suter said that Chase had conducted a thorough review, she has acknowledged on behalf of Chase that repeated telephone calls were made by Chase to plaintiff concerning the alleged Chase auto loan of plaintiff's former wife.

47.     By not making any reference to any debt collector, Suter, acting for Chase, was intentionally keeping participation of a debt collector subject to the FDCPA secret in order to further the conspiracy by Chase and ARM to allow ARM to commit wire fraud by falsely claiming it was Chase and not subject to the FDCPA limit of one call to non-debtors.

48.     Plaintiff then received another letter from Chase Bank, dated March 11, 2011, and sent by Daphne Delbrune, Executive Specialist, Chase Auto Finance Executive office in Garden City, New York,  which enclosed the previously received letter of March 3, 2011 from Suter, but offered nothing new. Delbrune enclosed a copy of the Suter letter and said, "We hope that we have been responsive to your inquiry and that our correspondence has provided a resolution to your concerns."  The Delbrune letter was part of the conspiracy between Chase and ARM to keep ARM's participation and identity as a debt collector secret so that it could continue to engage in wire fraud on behalf of Chase in order to increase Chase auto loan collections.  A copy of the Delbrune letter is attached hereto as Exhibit D.

49.      Plaintiff also received a letter, dated March 16, 2011, from Concetta Palladino, Executive Specialist, Chase Auto Finance Executive Office, in Ft. Worth, TX in which she said

- 12 -

that further research and review is needed of my claims stated in the Cutler letter of March 14,

2011. She said the research and investigation would be completed in ten days. A copy of the

Palladino letter is attached hereto as Exhibit E and incorporated herein by reference.  It was

surprising that a Chase Auto Finance Executive would be responding on behalf of the General

Counsel of Chase and not a member of the Chase legal department.

50.     On March 28, 2011, plaintiff received a telephone call from Jeffrey Levine,

Esquire, who was and is the General Counsel of Chase Auto Finance.  During that telephone call,

Mr. Levine read a list of phone calls that had been made to various of plaintiff's telephones,

including cell phones and land lines, starting in 2009 and continuing until March, 2011. Mr.

Levine stated that plaintiff had no claim under the FDCPA against Chase as Chase was a creditor

and was exempt from the FDCPA.  Mr. Levine also identified a company he called ARM as

potentially involved in some telephone calls, but he did not provide any further elaboration.

51.     On that same day, March 28, 2011, Mr. Levine sent an email to plaintiff which

differed somewhat from what he had stated to plaintiff over the telephone.  His email was as

follows:

> Mr. Berk.  As I have mentioned on the call with you today, based on our
> investigation we cannot find any records of having made a telephone
> contact with you or your ex-wife Marian.  We do have records of left
> messages at your home and cell phone number.  To the extent that you have
> records of caller IDs from calls in which you have spoken to a
> representative at Chase, please send those numbers to me so that I can
> investigate further.  We apologize for any inconvenience that we may have
> caused you and would be happy to try to resolve this matter. In any event, if
> you feel the need to serve us please use the following address: Legal Papers
> Serviced, 1 Chase Plaza, 20th Floor, New York, New York 10005-1401.

52.     Despite the fact that persons identifying themselves as Chase Auto Loans called

plaintiff on at least 20 occasions and spoke to plaintiff, and further despite the fact that on least

five occasions, persons calling as Chase Auto Loans spoke to Marian Tracey, plaintiff's second

former wife, Mr. Levine claimed in his email that their investigation did not reveal any telephone contact with plaintiff or Marian Tracey.  Mr. Levine did not state the extent of the Chase investigation, but it was clearly grossly inadequate as plaintiff and Ms. Tracey have received numerous telephone calls from Chase Auto Loans concerning the Nancy Berk auto loan since 2009 and most intently in 2010 and 2011.  Each of the Chase Auto Loan callers said they were calling regarding the supposed auto loan of Nancy Berk.  Levine as General Counsel of Chase Auto Finance deliberately and intentionally kept the exact participation of ARM secret in order to further the conspiracy between Chase and ARM to allow ARM to falsely portray itself as Chase and not subject to the one call limit of the FDCPA.

53.     On March 30, 2011 Jeffrey Levine, Esquire, General Counsel of Chase Auto Loans, sent a letter by Federal Express to plaintiff which plaintiff received on March 31, 2011. The letter was signed by Mr. Levine as Senior Vice President, General Counsel, of Chase Auto Finance Corp. with offices at 900 Stewart Avenue, Garden City, NY 11530-4855.  The Levine letter was copied to Stephen M. Cutler, Esquire, Executive Vice President, General Counsel of Chase.   The Levine letter is attached hereto as Exhibit F and is incorporated herein by reference. Mr. Levine states in the letter that "we did not find any records that Chase Auto Finance made direct contact with you or Marian Tracey."  Since both Marian Tracey and plaintiff had direct contact on numerous and repeated occasions where questions were asked about an auto loan of Nancy Berk, Mr. Levine's statement is deliberately false and was designed to further the conspiracy between Chase and ARM to keep ARM's exact participation and identity secret and to allow it to falsely portray itself in wire fraud telecommunications as Chase Auto Loans and not subject to the FDCPA.  Mr. Levine knew or should have known that his statements

- 14 -

concerning the Chase investigation was grossly inadequate and incomplete and deliberately and intentionally calculated to misstate the true results of the Chase investigation.

54.     Mr. Levine did confirm that a Jack Russell, an employee of Chase called plaintiff on March 7, 2011 concerning the Nancy Berk auto loan, but Mr. Levine completely falsified the nature and subject of that conversation as Levine claimed that Russell called to assist in resolution of plaintiff's complaint. However, Mr. Levine also said that Mr. Russell called to "obtain further details" and that is true since Mr. Russell grilled plaintiff on the location of Nancy Berk, the nature of her vehicle, whether she had taken out an auto loan and other matters, none of which plaintiff had any knowledge including, as it turns out, as to Nancy Berk's location.

55.     Mr. Levine's statement s concerning the nature of Mr. Russell's grilling examination of plaintiff was deliberately incorrect and knowingly false and made by Mr. Levine as General Counsel of Chase Auto Finance Corp with the intent to deceive plaintiff and to distort and falsify the actions of Chase and to conceal the exact participation of ARM.

56.     Upon receipt of Levine's letter of March 30, 2011, plaintiff sent Levine an email stating that his letter was incorrect and plaintiff included details of the information he provided to Russell and how Russell was only interested in obtaining information about the Nancy Berk loan.  Levine also neglected to say that Russell could never confirm that plaintiff's former wife was the Chase borrower.

57.     Levine, as General Counsel of Chase Auto Finance Corp, then stated that Chase "notified Accounts Receivable Management ("ARM") a collection agency, and requested that no further attempts be made to contact you for the location information of a particular Chase customer relating to a Chase auto account.  Please use the following address if you would like to

contact ARM: Accounts Receivable Management, 155 Mid-Atlantic Parkway, Thorofare, NJ 08086."

58.     Prior to the Levine letter of March 30, 2011, no one from Chase had referred to or identified ARM as a debt collector involved in collection of a supposed auto loan debt of Nancy Berk.

59.     Plaintiff sent a letter to ARM on April 1, 2011 stating that the General Counsel of Chase Auto Finance Corp had stated in writing that ARM had contacted plaintiff and Marian Tracey concerning the supposed Nancy Berk auto loan, and asking for their confirmation of the contacts with plaintiff.  A copy of the plaintiff's letter to ARM, dated April 1, 2011, enclosing a copy of his letter of February 26, 2011 to the United States Attorney and the letter from Jeffrey Levine, the General Counsel of Chase Auto Finance Corp., dated March 30, 2011.  Plaintiff noted that Chase claimed orally that ARM was responsible for most of the telephone calls to plaintiff and Marian Tracey concerning the Nancy Berk auto loan.  The ARM April 1, 2011 letter is attached hereto as Exhibit G and incorporated herein by reference.

60.     On April 5, 2011 plaintiff sent another letter to ARM stating that until the letter from Levine of Chase, plaintiff had never heard of ARM, and no one who called plaintiff or Marian Tracey said they were with or employed by ARM or that they were a debt collector. Nevertheless, the General Counsel of Chase Auto Finance Corp, Mr. Levine, claimed that ARM was the principal caller regarding the supposed Chase Auto loan.  Plaintiff also noted that all callers regarding the Nancy Berk auto loan said they were calling from Chase Auto Loans. Plaintiff also stated in that letter that whenever plaintiff requested identifying and contact information for the caller claiming to be Chase Auto Loans, they hung up the phone and refused

to answer.  The ARM April 5, 2011 letter is attached hereto as Exhibit H and incorporated herein by reference.

61.     On April 5, 2011, plaintiff received a letter from Thomas Novak, Esquire, In-House counsel for ARM in which he implicitly admitted that ARM had been calling plaintiff and Tracey for two years but claimed that ARM's actions did not violate any consumer protection statute, including the FDCPA and the TCPA.  He claimed that no one ever advised ARM that they had dialed a wrong number.  A copy of Novak's letter is attached hereto as Exhibit I and incorporated herein by reference.

62.     Chase and/or ARM also made approximately five telephone calls to Joan McClure during 2010 and 2011concerning the supposed Nancy Berk Chase auto loan. Ms. McClure lives with plaintiff and the calls received by Ms. McClure, being five in number, were intended to be received by plaintiff.  Each such caller to Ms. McClure identified themselves as Chase Auto Loans, but neither plaintiff nor Ms. McClure knows whether the caller was actually Chase or ARM in light of the conspiracy by Chase and ARM to conceal ARM's identity as a debt collector.

63.     Every call made to plaintiff, Marian Tracey and Joan McClure concerning the supposed Nancy Berk auto loan was made by persons claiming to be "Chase Auto Loans."

64.     No caller to plaintiff, Marian Tracey or Joan McClure concerning the supposed Nancy Berk auto loan identified themselves as calling from ARM or that they were a debt collector.

65.     In a telephone call made by Levine to plaintiff on March 28, 2011, Levine stated they had records of numerous calls made to plaintiff over a three year period and that some or all had been made by ARM and not Chase.  Levine also stated that Chase and ARM had a contract

for debt collection services and Chase had remedies against ARM if ARM breached its

obligations and warranties to Chase or ARM violated various consumer protection statutes.

66.     Levine did not refer to any action taken by Chase against ARM under its contract

or otherwise concerning the numerous calls to plaintiff concerning the supposed Nancy Berk

auto loan, and on information and belief, Chase has not claimed that ARM has breached any

contract with Chase or that ARM violated any consumer protection laws.  To the best of

plaintiff's knowledge, Chase has not taken any remedial action against ARM concerning the

matters alleged herein and it has failed to claim a breach of contract in order to further its

conspiracy with ARM to conceal ARM's true identity.

67.     Despite the Levine letter of March 30, 2011, other persons writing to plaintiff

from the Executive Offices of Chase Auto Finance Corp., including the March 3 and March 10

letters, Exhibits E and F, claimed that Chase personnel had contacted plaintiff but that the Chase

personnel actions were consistent with their policies and procedures.  Neither the Suter letter of

March 3, 2011 or the Delbrune letter of March 10, 2011, each sent from the Executive Offices of

Chase Auto Finance Corp. and supposedly written after a Chase investigation,  referred to ARM

or suggested that anyone other than Chase had made the telephone calls to plaintiff.  Each of

Suter and Delbrune apologized to plaintiff for the actions of Chase as identified in plaintiff's

letter to the United States Attorney.

68.     ARM employees and agents falsely stated to plaintiff, Marian Tracey and Joan

McClure that they were "Chase Auto Loans" and were calling on its behalf.

69.     Chase was at all times herein aware of ARM's false representations to be Chase

Auto Loans and not subject to the FDCPA, and Chase could and did look at a number of

consumer complaints that appear on various websites referring to telephone calls to third parties

concerning chase auto loans but never referring to ARM.  Chase allowed ARM to falsely claim it

was Chase Auto Loans and took no action against ARM for doing so since the false

representation, stated in wire fraud telecommunications to non-debtors, was believed by Chase to

increase auto loan collections..

70.     Plaintiff does not know whether Chase sold auto loans to ARM or whether it

retained the loans and paid ARM a percentage or a fee if collections on auto loans were made

based upon ARM's actions and false claims to being Chase Auto Loans, but in either case

ARM's false claim to be Chase Auto Loans, a creditor, was designed to increase Chase and

ARM auto loan collections.

71.     Chase intentionally  and deliberately permitted ARM to fraudulently refer to itself

as Chase when calling people regarding auto loans in order to be able to claim that third parties

were being called by a creditor, and the calls to third parties who were not Chase debtors were

therefore not subject to the Fair Debt Collections Practices Act which generally applies to debt

collectors but not creditors.  Chase's General Counsel Levine so claimed to plaintiff that the calls

from Chase Auto Loans were calls from a creditor despite the fact that Levine had an

investigative report showing the identity of many or most of the callers being ARM.

72.     ARM and Chase agreed to allow ARM to use the name 'Chase Auto Loans" in

calling third parties concerning Chase auto loans in order to falsely conceal the fact that ARM

was a debt collector subject to the Fair Debt Collection Practices Act and to implement and

further the conspiracy by Chase and ARM to benefit financially by ARM's wire fraud.

73.     Chase knew that ARM was falsely advising third persons that they were "Chase

Auto Loans," which claim was false and stated with intent to defraud the third persons and

deprive them, including plaintiff, of their rights under the Fair Debt Collection Practices Act.

74.     There is no company called "Chase Auto Loans", and ARM is not "Chase Auto Loans."

75.     ARM is not owned by Chase.

76.     Frank Russell, who admitted to being an employee of Chase Bank or Chase Co., and who called plaintiff, according to Russell, at the specific direction of the General Counsel of Chase Co., Stephen Cutler, Esquire, to whom plaintiff had sent a copy of his February 26, 2011 letter to the United States Attorney, harassed plaintiff and grilled plaintiff concerning the supposed auto loan of Nancy Berk, and he demanded information concerning her whereabouts. Russell did this even though plaintiff had stated repeatedly to the callers from Chase Auto Loans and in his letter to the U.S. Attorney that the supposed auto loan was taken by his former wife from whom he was divorced in August, 1998 and he has no knowledge concerning any such auto loan.

77.     Despite the fact that plaintiff had made clear in his letter to the U.S. Attorney, that Cutler had received, he had been harassed and his privacy invaded by the repeated and numerous calls from persons claiming to be Chase Auto Loans, Mr. Russell, at the direction of the General Counsel of Chase Co. and Chase Bank, or at the direction of Elizabeth Barry, the Chase Head of Retail Banking who also received a copy of the letter to the U.S. Attorney, Russell grilled plaintiff and demanded information about Nancy Berk and her auto loan.

78.     Neither ARM or Chase had any reason to call plaintiff at any time, and certainly no more than once, concerning the location of Nancy Berk, his former wife, and they could easily have utilized the services of the United States Postal Service to learn her location if she moved from the address when she applied for an auto loan, if she did so apply.

## CLASS ACTION ALLEGATIONS

79.     Plaintiff brings this action on his own behalf and on behalf of the class of persons who have no auto loan with Chase Bank or Chase Auto Finance but who have received more than one telephone call from ARM and/or Chase concerning the auto loan debt to Chase of third parties.  The action is brought under Rule 23(b)(2) of the Federal Rules of Civil Procedure where plaintiff seeks injunctive and declaratory relief benefiting the class as a whole by enjoining the ARM and Chase practices of repeatedly calling class members concerning auto loans of third parties in order to harass the class members to cause the class members to contact the known Chase borrower to pay their loan in order to cause Chase and ARM to stop the repeated harassing telephone calls of class members.  Plaintiff brings this action as a private attorney general to enforce federal law against Chase and ARM for the benefit of all class members.

80.     It is necessary for the named plaintiff to bring this action on behalf of the class since the United States Attorney for the Eastern District of Pennsylvania sent a letter in response to plaintiff's letter, Exhibit A, advising that relief could be sought through the Pennsylvania Attorney General or the Federal Trade Commission and suggested a complaint be filed at either or both places.  In the absence of any action by the local Untied States Attorney, plaintiff is seeking to vindicate the legal rights and enforce federal law against defendants.

81.     Both Chase and ARM regularly call third parties concerning auto loans by Chase customers.  Beyond one telephone call for location information, they have no legitimate or legal reason to continue telephone calls to nonparties.

82.     The class is so numerous that joinder of all class members is impracticable. Plaintiff estimates that the class exceeds 10,000 persons who have been called during 2011 by Chase and ARM concerning third party obligations to Chase.  Plaintiff has sought discovery

from defendants on the number of class members they have called in 2010 and 2011 concerning

third party Chase auto loan obligations, but as of this date, the defendants have not yet responded

to the discovery requests.

83.     There are questions of law and fact common to the class, namely whether ARM

and Chase have entered into a conspiracy to violate the Fair Debt Collection Practices Act by

means of making false statements concerning their identities, and in the case of Chase allowing

ARM to make false statements concerning its identity, with the intent to deceive and defraud

utilizing interstate telecommunications devices through ARM falsely claiming to class members

that it is Chase Auto loans for the purpose of claiming exemption from  the FDCPA limitations.

Chase knows of the ARM false representations and wire fraud undertaken to increase Chase auto

loan collections and it is has benefited finically from the conspiracy to permit ARM to commit

wire fraud.

84.     The claims of the plaintiff class representative are typical of the claims of the

class.  Each of the class members are in the same identical position as named plaintiff . They do

not owe an auto loan to Chase and are not obligated under any auto loan from Chase but

nevertheless receive repeated, harassing telephone calls from Chase and ARM regarding auto

loan debts of third parties.

85.     The representative plaintiff will fairly and adequately protect the interests of the

class, and the class counsel has substantial experience in similar class actions seeking injunctive

and declaratory relief.   Plaintiff, as an attorney who has been in law practice since 1971, has

brought class action cases seeking injunctive and declaratory relief which resulted in final

judgment for the benefit of the class.  See, e.g. *Resident Advisory Board v. Rizzo,* 425 F. Supp.

987 (E.D. Pa. 1976), aff'd in part and modified 564 F.2d 126 (3d Cir. 1977), cert. denied 435

U.S. 908 (1978); *Fox. v. U.S. Department of Housing and Urban Development,* 680 F. 2d 315

(3d Cir. 1982); *Griffin v. Harris*, 571 F.2d 767 (1978); and represented plaintiffs obtaining

declaratory relief against a defendant class of property owners to interpret implied restrictive

covenants in a case under Delaware law. *Leon N. Weiner & Associates, Inc. v. Krapf,* 623 A. 2d

1085 (Del. 1993) and 584 A.2d 1220 (Del. 1991)(certifying a defendant class action).

86.    The parties opposing the class, that is Chase Bank, Chase Co., Chase Auto

Finance and ARM have acted or refused to act on grounds that apply generally to the class so

that final injunctive and corresponding declaratory relief is appropriate respecting the class as a

whole. Defendants have failed to abide by limitations under the FDCPA applicable to debt

collectors and they have violated the rights of class members to be free of harassing telephone

calls concerning auto loans of third parties.  Defendants engage in their practice of repeatedly

harassing class members in order to increase Chase auto loan collections from Chase borrowers.

## FIRST CAUSE OF ACTION

87.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1

through 86 above.

88.    ARM is a debt collector as that term is defined in the Fair Debt Collections

Practices Act, 15 U.S.C. §1692a(6).

89.    ARM has called plaintiff approximately 20 times since May 1, 2010 concerning

an alleged auto loan owed by Nancy Berk, plaintiff's former wife, to Chase Bank or Chase Auto

Finance, and on each occasion plaintiff advised ARM that he has no knowledge of his former

wife's auto loans and that she resides and continues to reside at the same place since April, 1992.

After filing the initial complaint herein, the United States Postal Service advised plaintiff that his

former wife had moved to another location giving him a specific address.

90.     ARM has falsely stated to plaintiff on each telephone call that it was "Chase Auto Loans," and it never identified itself as a debt collector, and it falsely stated it was Chase Auto loans so that it could claim that it was a creditor and not subject to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

91.     ARM has violated the FDCPA by falsely identifying itself and assuming an identity other than its own, and ARM did not state that it was confirming or collecting location information about Nancy Berk, all in violation of 15 U.S.C. §1692b(1).

92.     ARM stated to plaintiff on numerous occasions that Nancy Berk owed a debt to "Chase Auto Loans", which they claimed was the caller, all in violation of 15 U.S.C. §1692b(2).

93.     ARM has called plaintiff using interstate telecommunication facilities from New Jersey, Kentucky or other locations when plaintiff is in Pennsylvania, and ARM has called plaintiff approximately 20 times from May 1, 2010 to the present concerning the alleged Nancy Berk Chase auto loan, but the FDCPA limits a debt collector calling third persons to one phone call, so ARM has intentionally violated 15 U.S.C. §1692b(3).

94.     ARM had no reason or justification to call plaintiff for location information for Nancy Berk since she lived at the same address from April, 1992 until some date in 2010, and her address would appear on any Chase auto loan documents, if such loan exists.

95.     ARM has repeatedly engaged in harassment, abuse and oppression of plaintiff by the repeated telephone calls concerning an alleged loan of Nancy Berk concerning which plaintiff has no knowledge, and ARM has violated 15 U.S.C. §1692d which prohibits such harassment.

96.     ARM has repeatedly violated 15 U.S.C. §1692d(6) by making repeated telephone calls to plaintiff and not providing truthful information as to the caller's identity.

97.     ARM has violated 15 U.S.C. §1692e by making false, misleading and deceptive representations concerning its true identity, and specifically by using false representations concerning their identity and deceptive means to collect a debt or to obtain information concerning a consumer, namely plaintiff's former wife, Nancy Berk, specifically violating 15 U.S.C. §1692e(10).

98.     ARM has violated 15 U.S.C. §1692e(14) by falsely claiming to be Chase Auto Loans and not identifying itself as ARM, a debt collector.

99.     Plaintiff brings this action against ARM for violation of the FDCPA under 15 U.S.C. §1692k which provides for an action against any person violating the FDCPA, without regard to the amount in controversy, in any appropriate United States District Court.

100.     Plaintiff has suffered damages from ARM's violations of the FDCPA since plaintiff becomes upset, distraught, has elevated heart rate, and his heart condition of atrial fibrilation is adversely affected by the stress and tension induced by ARM through its repeated, harassing telephone calls concerning his former wife's supposed auto loan of which he has repeatedly said he has no knowledge, and because he becomes distraught at even the mention of her name or her financial affairs

WHEREFORE, plaintiff prays that the Court enter judgment on his behalf and against defendant ARM for actual damages and additional damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with attorney fees, interest and costs.

## SECOND CAUSE OF ACTION

101.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 100 above.

102.    Chase is an alleged creditor of Nancy Berk, plaintiff's former wife, but plaintiff has no knowledge whether his former wife actually owes Chase anything.

103.    Chase knew that ARM was calling third persons and falsely telling them they were "Chase Auto Loans" and seeking information about Chase auto debtors.

104.     Chase permitted ARM to falsely claim it was Chase Auto Loans and to seek information about Chase auto loans from third persons who were not Chase debtors.

105.    Chase representatives from the Chase Auto Finance Executive offices stated in the Suter and Delbrune letters to plaintiff that Chase personnel had called plaintiff concerning the Nancy Berk auto loan, and they apologized for the repeated telephone calls to plaintiff.

106.    Chase does not have any division, subsidiary, or corporation called "Chase Auto Loans," but every call made to plaintiff was made by a caller who identified themselves as "Chase Auto Loans," and as such Chase was using a name other than its own in communications with a third person, not a debtor of Chase, and by using a false name in interstate calls to plaintiff, Chase is covered by the definition of "debt collector" since it includes creditors who use names other than their own in calling third persons. 15 U.S.C. §1692a(6).

107.    As confirmed by the Suter and Delbrune letters and in oral statements made to plaintiff on March 28, 2011 by Levine, General Counsel of Chase Auto Finance, Chase has made various telephone calls to plaintiff concerning the alleged Nancy Berk auto loan, and as such Chase is a debt collector and is liable to plaintiff for falsely identifying itself and in making repeated, annoying and harassing telephone calls to plaintiff, on more than one occasion, and thereby has violated the FDCPA, and specifically, 15 U.S.C. §§1692b, 1692d, and 1692e.

108.    By using a false name to call Plaintiff repeatedly concerning the supposed Nancy Berk auto loan from April 23, 2010 to the present, Chase has violated the FDCPA and is liable to

plaintiff for actual and additional damages under 15 U.S.C. §1692k, and as alleged above, Chase

is liable to plaintiff for causing plaintiff elevated heart rate, adverse effects to his atrial fibrilation

heart condition, elevated blood pressure, stress and tension, all of which result in damage to

plaintiff in the amount in excess of $75,000.00, together with attorney fees, interest and costs.

WHEREFORE, plaintiff prays that judgment be entered in his favor and against Chase in

an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) together with attorney fees,

interest and costs.

### THIRD CAUSE OF ACTION

109.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1

through 108 above.

110.    Chase has knowingly permitted ARM to falsely claim that it is Chase Auto Loans

for the purpose of extracting information from third parties about debtors owing money on auto

loans to Chase Bank or Chase Auto Finance.  Part of the reason for Chase allowing the false

representations by ARM was to permit ARM to claim that it was a creditor and not a debt

collector and thereby not subject to the FDCPA.

111.    Chase and ARM have conspired together to allow ARM to falsely claim it is

Chase Auto Loans to third persons, not being Chase debtors, in order to permit ARM to

repeatedly call third persons and not be subject to the limitations of the FDCPA, which Chase

and ARM agreed to do in order to increase the collection rate of Chase and ARM on auto loans

granted by Chase Bank and Chase Auto Finance.

112.    ARM and Chase violated 18 U.S.C. §1343 by devising or intending to devise a

scheme to defraud or to obtain money or property by false or fraudulent pretenses and by false

representations concerning ARM's true identity and where ARM and Chase using telephones in

interstate commerce used the wires thereof to execute such scheme in order to increase Chase

and ARM debt collections on Chase auto loans through a conspiracy to evade the limitations of

the FDCPA.

113.    ARM and Chase executed the fraudulent scheme against plaintiff for a period in

excess of two years and specifically through multiple and repeated calls to him since April 23

2009 numbering approximately thirty (30) and since April 23, 2010, numbering at least twenty

(20) since that date, concerning the supposed Nancy Berk auto loan regarding which plaintiff has

no knowledge and repeatedly so advised Chase and ARM.  ARM 's and Chase's purpose in so

repeatedly contacting plaintiff was to cause him to contact Nancy Berk, his former wife, in order

to pressure her to pay her Chase auto loan so that the calls to plaintiff by ARM and Chase would

cease.

114.    Chase and ARM engaged in "racketeering activity" as that term is defined in 18

U.S.C. §1961 which includes actions "relating to wire fraud" under 18 U.S.C. §1343 by means

of the actions set forth above.

115.    Chase and ARM conspired together to implement the scheme to conceal ARM's

true identity in order to evade the FDCPA, and Chase and ARM and their employees involved in

the scheme have violated 18 U.S.C. §1962 under which "it shall be unlawful for any person

employed by or associated with any enterprise engaged in, or the activities of which affect,

interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs through a pattern of racketeering activity."

116.    Chase and ARM have conspired together to conceal ARM's true identity in order

to evade the limitations of the FDCPA, and they have thereby violated 18 U.S.C. 1962(d) by a

conspiracy to violate 18 U.S.C. §1962(c).

117.    The Suter and Delbrune letters sent to plaintiff were sent to further the conspiracy between Chase and ARM by advising plaintiff that the calls he had received from "Chse Auto Loans" were from employees of Chase without disclosing that some or most of the calls were actually from ARM, a debt collector subject to the FDCPA.

118.    Chase Auto Finance General Counsel Levine furthered the conspiracy between Chase and ARM by telling plaintiff that he had no claim against Chase for their numerous phone calls under the FDCPA since Chase was a creditor not subject to the FDCPA.  Since Levine claimed to have a report of a Chase investigation concerning the calls to plaintiff, he must have known that many calls were placed by ARM falsely posing as Chase Auto Loans with Chase's permission.  It was only after Levine vigorously asserted that Chase was not subject to the FDCPA that he advised plaintiff that some calls to him were possibly from a debt collector named ARM that was under contract with Chase.

119.    Suter and Delbrune concealed ARM's identity and participation with Chase to further the Chase and ARM conspiracy called Chase Auto Loans.

120.    Plaintiff has been injured in his business and property by reason of Chase's and ARMs violations of 18 U.S.C. 1962(c) and (d), and plaintiff "may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee" pursuant to 18 U.S.C. §1964(c).

121.    As alleged above, plaintiff has been injured in his business and property by the actions of defendants Chase and ARM which have caused him to suffer the adverse physical and medical conditions described above and to interfere with his business in the practice of law and in this project finance consulting business, which actions were intentional and deliberate by Chase and ARM, and for which he is entitled to treble damages under 18 U.S.C. §1964(c).

- 29 -

WHEREFORE, plaintiff prays that judgment be entered in his favor and against defendants Chase and ARM for treble damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with attorney fees and costs and interest.

## FOURTH CAUSE OF ACTION

122.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 121 above.

123.    Chase and ARM have implemented their scheme to conceal the true identity of ARM in order to evade application of the FDCPA in order to increase their collections on auto loans by forcing third parties to contact Chase borrowers in order to get them to repay their loans.

124.    Through a pattern and practice of repeated harassment of third parties concerning supposed auto loans granted by Chase to borrowers, Chase and ARM have conducted a racketeering activity, known as Chase Auto Loans, involving use of wire fraud to make false representations to third parties concerning ARM's identity in order to increase Chase and ARM auto loan collections.

125.    Plaintiff has reviewed complaints filed by persons with on-line complaint board services, and there are many such postings from people around the country complaining of calls to persons who are not Chase auto loan borrowers but who nevertheless receive repeated and harassing calls from persons identifying themselves as Chase Auto Loans or Chase Auto Finance or similar names. In none of the complaints plaintiff reviewed was the name of a debt collector ever used, instead the caller was always identified as some Chase entity, and often when questions were asked concerning caller identity or location, the complainants said the supposed Chase representatives hung up the phone.

126.     Based upon plaintiff's experience over two or almost three years receiving telephone calls from "Chase Auto Loans" about the supposed Nancy Berk auto loan, and upon review of the on-line complaints it appears that the practices that plaintiff has endured have been experienced by many other people around the nation.

127.     Discovery will be necessary to determine the extent of ARM and Chase calls to third persons who are not Chase auto loan borrowers regarding the ARM and Chase telephone harassment practices, and plaintiff has initiated that discovery but defendants have not yet responded.

128.     The class of similarly situated third persons who have no Chase auto loan but who have received repeated and harassing telephone calls from ARM and Chase regarding Chase auto loan borrowers, need injunctive and declaratory relief to prevent ARM and Chase from continuing their racketeering enterprise by using false representations about ARM's true identity to commit wire fraud in order to increase Chase debt collections by harassing third persons to pressure Chase borrowers to pay Chase.

129.     According to 18 U.S.C. §1964(a):

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

130.     Unless enjoined, Chase and ARM will continue their racketeering activity to increase auto loan collections by making it appear that ARM is not a debt collector and not subject to the limitations of the FDCPA.

WHEREFORE, plaintiff prays on behalf of himself and on behalf of the class of similarly situated persons that defendants Chase and ARM be enjoined to affirmatively respect and obey the provisions of the FDCPA and that ARM be enjoined to identify itself as a debt collector whenever making calls to third persons who are not Chase debtors and to limit their calls to third persons to instances when they actually require information concerning the location of a Chase auto loan borrower, and most importantly, to never call a third person more than once seeking information about the location of a Chase auto loan borrower, and for such other and further relief as the Court deems just and proper to remedy the defendants violation of federal law through their continuing racketeering enterprise and conspiracy to promote same, together with attorney fees and the costs of this action.

## FIFTH CAUSE OF ACTION

131.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 130.

132.    The actions of defendants Chase and ARM in repeatedly harassing plaintiff by telephone calls to him over the last two years, numbering at least twenty (20), concerning a supposed auto loan by his former wife was done by defendants to intentionally inflict emotional harm upon plaintiff so that he would pressure or cause his former wife to pay a supposed Chase auto loan in order to get Chase and ARM to stop the telephone calls to plaintiff.

133.    Defendants were without any privilege, right, authority, or justification to make the repeated telephone calls to plaintiff.

134.    Defendants knew that their repeated telephone calls to plaintiff concerning a supposed auto loan by his former wife were harassing, obnoxious and intended to cause plaintiff emotional harm and damage.

135.    Plaintiff and his former wife continue to be at odds emotionally, and plaintiff does not want to hear from his former wife or anything about her business or financial affairs.

136.    When defendants knew that Nancy Berk, the alleged borrower, was plaintiff's former wife, of which plaintiff so advised them on numerous occasions, they intentionally undertook to use that hostile relationship for their benefit and embarked on a practice and policy of harassing plaintiff with repeated telephone calls about the alleged Chase auto loan to Nancy Berk in order to cause plaintiff mental anguish, anxiety and stress so that he would ultimately pressure Nancy Berk to pay Chase her loan, if she had one.

137.    Defendants have intentionally caused plaintiff grave emotional harm, stress, anxiety and discomfort by their repeated telephone calls about the Nancy Berk auto loan resulting in elevated blood pressure and heart rate and interfering with plaintiff's business as a lawyer and causing him emotional and financial harm and damage.

138.    Defendants' conduct as outlined above was outrageous and without right or authority and plaintiff is entitled to both compensatory and punitive damages.

WHEREFORE, plaintiff prays that judgment be entered in his favor and against the defendants Chase and ARM, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) together with the costs of this action and interest.

## SIXTH CAUSE OF ACTION

139.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 138 above.

140.   Plaintiff is entitled to solitude and seclusion in his private affairs and concerns.

141.   Defendants Chase and ARM by their individual actions and their collective actions, as set forth above, have invaded plaintiff's privacy and intentionally and deliberately and without authority or justification invaded plaintiff's personal privacy in such a manner as would be offensive to any reasonable person.

142.   Repeatedly calling plaintiff about an alleged auto loan by his former wife from whom he has been divorced since August, 1998 and with whom he has not lived since February, 1997, when defendants were advised that Nancy Berk was plaintiff's former wife and he knew nothing about any supposed auto loan to her, was an intentional and deliberate invasion of plaintiff's right to privacy for which defendants are liable in damages to plaintiff.

143.    Defendants have intentionally caused plaintiff grave emotional harm, stress, anxiety and discomfort by their repeated telephone calls about the Nancy Berk auto loan resulting in elevated blood pressure and heart rate and interfering with plaintiff's business as a lawyer and causing him emotional and financial harm and damage.

144.   Defendants' conduct as outlined above was outrageous and without right or authority, and plaintiff is entitled to both compensatory and punitive damages from defendants.

145.   Defendants conduct as set forth above constitutes an unauthorized intrusion of plaintiff's right to privacy and seclusion as set forth in Restatement of Torts, Second, Section 652B which has been adopted as the law of Pennsylvania.

WHEREFORE, plaintiff prays that judgment be entered in his favor and against

defendants Chase and ARM, individually and jointly, in an amount in excess of Seventy-Five

Thousand Dollars ($75,000.00) together with his costs of this action and interest.

Date: July 13, 2011

/s/ Harold R. Berk____HRB 2158_____
HAROLD R. BERK, ESQUIRE
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-646-3434 fax
haroldberk@gmail.com
PA Attorney ID No: 22566

Attorney for Plaintiff

CERTIFICATE OF SERVICE

I, Harold R. Berk, Esquire, counsel for plaintiff, hereby certify that a copy of the foregoing Amended Civil Complaint- Class Action was served by overnight courier and email this 13th day of July, 2011 on the following counsel for the defendants:

Martin C. Bryce, Jr., Esquire
Ballard Spahr
1735 Market Street, 51st floor
Philadelphia, PA 19103
bryce@ballardspahr.com

Joann Needleman, Esquire
Maurice and Needleman, P.C.
1617 J.F.K. Boulevard
Suite 935 One Penn Center
Philadelphia, PA 19103
joann@mnlawpc.com

_HRB 2158_____
Harold R. Berk, Esquire
Attorney for Plaintiff