IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HAROLD R. BERK**, individually and on behalf of a class similarly situated, : Plaintiff, : v. : : **J.P. MORGAN CHASE BANK, N.A.**, et al., : Defendants. : | CIVIL ACTION No. 11-2715 |

## MEMORANDUM

**Schiller, J.**                                                                                          **September 23, 2011**

Pro se Plaintiff Harold R. Berk brings this action against Defendants JPMorgan Chase Bank, N.A. ("Chase Bank"), JPMorgan Chase & Co. ("Chase Co."), and Chase Auto Finance Corporation (collectively, "Chase") and Accounts Receivable Management, Inc. ("ARM"), alleging that Chase and ARM violated the Fair Debt Collections Practices Act ("FDCPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO") and intentionally caused him emotional distress and intruded upon his seclusion. Berk also filed class action allegations against Chase and ARM seeking injunctive and declaratory relief under RICO on behalf of the class. Berk, an attorney, seeks to serve both as a class representative and as pro se class counsel. Presently before the Court are Defendants' motions to dismiss the complaint and to strike Plaintiff's class action allegations. For the reasons set forth below, Defendants' motion to dismiss will be granted as to Plaintiff's FDCPA claim against Chase, Plaintiff's RICO claims brought by himself and on behalf of the purported class, and Plaintiff's intentional infliction of emotional distress claim. Defendants' motion to dismiss will be

denied as to Plaintiff's FDCPA claim against ARM, his intrusion upon seclusion claim, and his claims against Chase Co.

## I. BACKGROUND

Beginning in 2009, Harold Berk started receiving telephone calls from individuals identifying themselves as "Chase Auto Loans" regarding an alleged auto loan of Nancy Berk. (Am. Compl. ¶ 16.) Harold and Nancy Berk divorced in 1998. (*Id.*) Plaintiff had no knowledge of Nancy's auto loan. (*Id.*) However, Berk continued to receive telephone calls from 2009 through 2011 concerning the Nancy Berk loan. (*Id.* ¶ 18.) Plaintiff estimates having received five calls in 2009, twenty calls in 2010, and five calls in 2011. (*Id.* ¶¶ 23-25.) These calls were received at three different homes and on four different phone lines. (*Id.* ¶¶ 19-21.) On every occasion, Berk told the callers that he had no knowledge of the matter and to stop calling. (*Id.* ¶ 26.) Marian Tracey, from whom Berk divorced in 2009, also received telephone calls regarding the Nancy Berk loan. (*Id.* ¶ 28-29.) Tracey was upset by the calls, which created additional tension between Berk and Tracey. (*Id.* ¶ 30.) Furthermore, Berk states that his divorce from Nancy Berk was not amicable, and the repeated phone calls regarding her auto loan caused him great stress and adversely affected his heart condition. (*Id.* ¶ 33.)

Beginning in November 2010, Berk began threatening to report the callers to the U.S. Attorney's Office. (*Id.* ¶ 36.) On February 26, 2011, Plaintiff sent a letter regarding the phone calls to Zane David Memeger, U.S. Attorney for the Eastern District of Pennsylvania, stating that a "major bank is violating the Fair Debt Collection Act, privacy acts and other laws." (Am. Compl. Ex. A [Memeger letter], ¶ 38.) The letter requested that the U.S. Attorney investigate the matter. (*Id.*) Berk also sent the Memeger letter to individuals at Chase, including Stephen M. Cutler, general

counsel of Chase Bank and Chase Co., and James Crown, member of the Board of Directors of Chase Co. (*Id.* ¶¶ 39, 40.) On March 3, 2011, Michon Suter, executive specialist for Chase Auto Finance Executive Office, sent a letter to Berk informing him that his phone number was "erroneously associated with a Chase Auto Finance account," that it "ha[d] been removed," and that he "should no longer receive any calls from Chase Auto Finance." (*Id.*; Am. Compl. Ex. C [Suter letter]). Suter also gave Berk his direct number in case Berk received more calls. (*Id.*) On March 7, 2011, Jack Russell, a representative of Chase, called Plaintiff, indicating that he was calling at the specific direction of Cutler, and Berk sent a follow-up letter to Cutler on March 14, 2011 recounting the conversation with Russell. (*Id.* ¶¶ 41, 42, 44.) Berk also received a letter dated March 16, 2011 from Concetta Palladino, executive specialist for Chase Auto Finance Executive Office indicating receipt of Berk's March 14 letter. (*Id.* ¶ 49.) On March 28, 2011, Jeffrey Levine, General Counsel for Chase Auto Finance, called Plaintiff and listed all of the calls that had been made to Berk's phone numbers. (*Id.* ¶ 51.) In a subsequent email, Levine stated that they could not find any records of having spoken with Berk or Tracey, but only of having left messages, but requested additional information to further investigate the alleged contacts. (*Id.* ¶ 52.) On March 30, 2011, Levine sent Plaintiff a letter by Federal Express, which stated that their investigation found no records indicating that Chase Auto Finance made direct contact with him or Tracey. (*Id.* Ex. F.) Levine also identified ARM as their debt collector and stated that they had notified ARM of the situation and requested that no further attempts be made to contact him. (*Id.*)

Having learned of the existence of ARM, Plaintiff wrote to ARM on April 1 and April 5, 2011, seeking confirmation of contacts with him, forwarding the Memeger letter, stating that ARM never identified its in its calls, and alleging FDCPA violations and harassment. (*Id.* ¶¶ 58-60, Ex.

3

G.) On April 5, 2011, Thomas Novak, ARM's in house counsel, responded stating their review found no violations of the law. (*Id.* Ex. I.)

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them in the light most favorable to the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The Court will construe Berk's complaint liberally, as he brings this action pro se. *See Haines v. Keener*, 404 U.S. 519 (1972); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 423 (E.D. Pa. 2000).

The Third Circuit applies a two-part analysis to determine whether claims should survive a Rule 12(b)(6) motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court must first separate the factual and legal elements of each claim, accepting well-pleaded facts as true but disregarding legal conclusions. *See id.* Second, the Court must determine whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *See id.* at 211. If the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the Court should dismiss the complaint for failure to state a claim. *See Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 123 (3d Cir. 2010).

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss, if the plaintiff's claims are based on the document. *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.  DISCUSSION

Chase and ARM contend that Berk has failed to state a claim under the FDCPA and RICO, and cannot make out a claim of intentional infliction of emotional distress or intrusion upon seclusion. Chase also argues that Berk has not asserted any allegations against Chase Co. Defendants further argue that Berk's class allegations should be stricken as a matter of law.

### A.  Failure to State a Claim under the FDCPA

Plaintiff has alleged that the Defendants violated the FDCPA by repeatedly calling him about another person's debt and by falsely identifying themselves as "Chase Auto Loans." The FDCPA protects consumers by providing a remedy for "abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005). The FDCPA prohibits three general categories of conduct by debt collectors: (1) harassment, oppression, or abuse; (2) false, deceptive, or misleading representations; and (3) unfair or unconscionable practices. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f.

A plaintiff must establish four elements to state an FDCPA claim: (1) he or she is a "consumer" who is harmed by violations of the FDCPA; (2) the "debt" arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a "debt collector"; and (4) the defendant has violated, by act or omission, a provision of the FDCPA. 15 U.S.C.A. §§ 1692a-1692o; *see e.g.*, *Langley v. Chase Home Fin., LLC*, Civ. A. No. 10-

604, 2011 WL 1150772 (W.D. Mich. March 11, 2011); *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 939 (N.D. Ohio 2009).

### *1. FDCPA Claim against ARM*

ARM asserts that Berk lacks standing to sue based on an auto loan that belonged to Berk's ex-wife Nancy and was made subsequent to the Berks' divorce. ARM emphasizes that Plaintiff alleged that he had no knowledge of "its terms, conditions, or payment status." (Am. Compl. ¶ 15.) ARM further argues that Berk has failed to allege that the debt is a "consumer debt," as required by the FDCPA. *See FTC v. Check Investors, Inc.*, 502 F.3d 159, 167 (3d Cir. 2007).

The FDCPA defines "debt" as "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). "Federal courts interpret [FDCPA civil liability] as a broad grant available to persons who are not obligated or allegedly obligated to pay the debt that the defendant sought to collect." *Wenrich v. Robert E. Cole, P.C.*, Civ. A. No. 00-2588, 2001 WL 4994, at *3 (E.D. Pa. Dec. 22, 2000). The FDCPA protects individuals who are not debtors provided "such persons . . . claim they are harmed by proscribed debt collection practices." *Yentin v. Michaels, Louis & Assocs., Inc.*, Civ. A. No. 11-0088, 2011 WL 4104675 at *17 (E.D. Pa. Sept. 14, 2011) (internal quotation marks omitted); *see also* H.R. Rep. No. 95-131, at 8 (1977) ("[P]eople who do not owe money, but who may be deliberately harassed are the family, employer and neighbors of the consumer . . . are also protected by [the FDCPA].") Plaintiff here has alleged damages, including his emotional distress, as well as physical symptoms related to his heart

condition as a result of ARM's conduct. (Am. Compl. ¶ 100.) Accordingly, the Court denies ARM's motion to dismiss Plaintiff's FDCPA case against it.

### 2.  *FDCPA Claim against Chase*

Chase argues that the FDCPA does not apply to Chase, because it is not a "debt collector" under the statute and therefore not subject to its regulations. "The FDCPA's provisions generally apply only to 'debt collectors.' Creditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) (citations omitted). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This definition focuses on third parties that are collecting a debt owed to another, rather than on creditors who collect on debts owed to themselves.

Plaintiff points to a narrow exception to this rule that exists for creditors who collect on debts using a false name—the "false name exception." *Id.* ("The term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.") "A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, 'pretends to be someone else' or 'uses a pseudonym or alias.'" *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (quoting *Villarreal v. Snow*, Civ. A. No. 95-2484, 1996 WL 473386, at *3 (N.D. Ill. Aug.19,1996)

Plaintiff concedes that the alleged debt is owed to Chase, and thus Chase is the alleged creditor. (Am. Compl. ¶ 102.) However, Plaintiff contends that the calls, which may have been from

7

Chase, always identified themselves as "Chase Auto Loans." (*Id.* ¶ 106.) Plaintiff argues that Chase does not have any division, subsidiary, or corporation called "Chase Auto Loans," and therefore Chase was using a name other than its own. (*Id.*)

The Court finds no merit in this argument. Congress did not intend that the FDCPA be interpreted with such hair-splitting. *See* Federal Trade Commission Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,107, 1988 WL 269068 (Dec. 13, 1988) ("[A] collector may use its full business name, the name under which it usually transacts business, or a commonly-used acronym. When the collector uses multiple names in its various affairs, it [must] consistently use[] the same name when dealing with a particular consumer.") No reasonable person would find that "Chase Auto Loans" is a false identification of any of the named Chase defendants—JPMorgan Chase Bank, JPMorgan Chase & Co., or Chase Auto Finance Corporation. Furthermore, Plaintiff concedes that "every call made to plaintiff was made by a caller who identified themselves as 'Chase Auto Loans.'" (Am. Compl. ¶ 106.) Plaintiff thus fails to establish that the false name exception should apply to Chase. As Chase is not a "debt collector" under the FDCPA, Plaintiff's additional claims for vicarious liability by Chase based on ARM's actions must also be dismissed. *See Pollice*, 225 F.3d at 404 ("[A]n entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf.").

**B.     Failure to State a Claim under RICO**

Plaintiff's third cause of action alleges that Defendants violated 18 U.S.C. § 1962(c) and (d). 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

8

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(d) outlaws conspiracies to violate the other provisions of § 1962. "RICO provides a private right of action to '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Shipp v. Donaher*, Civ. A. No. 09-2475, 2010 WL 1257972 (E.D. Pa. Mar. 25, 2010) (quoting 18 U.S.C. § 1964(c)). The Third Circuit "read[s] section 1964(c) as requiring a RICO plaintiff to make two related but analytically distinct threshold showings . . . (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) The injury element "can be satisfied by allegations and proof of actual monetary loss." *Id.* The injury requirement has a "restrictive significance, which helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Id.* (quoting *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)).

Plaintiff alleges that he has been "injured in his business and property" by Defendants' conduct. (Am. Compl. ¶¶ 120, 121.) In particular, he specifies that he suffered "adverse physical and medical conditions" and that the conduct has "interfere[d] with his business in the practice of law and this project finance consulting business." (*Id.* ¶ 121.) Elsewhere, Plaintiff alleges that he became "upset, distraught, ha[d] elevated heart rate, and his heart condition of atrial fibrilation [wa]s adversely affected by the stress and tension." (*Id.* ¶ 100.) None of these injuries is concrete and financial, and therefore Berk fails to state a RICO injury. *Shipp*, 2010 WL 1257972, at *11 (finding plaintiffs failed to establish standing to sue under RICO based on plaintiffs' allegations of threats

9

against person, employment, business relationships, reputation, and health; recusal from business activity; indignity; among others).

Furthermore, even if Plaintiff had standing under RICO, he has failed to state a claim under RICO. Plaintiff alleges that Chase and ARM and their employees conspired to conceal ARM's identify in order to evade the FDCPA, and they used the telephones in interstate commerce to do so. Plaintiff asserts that this conduct by Defendants constitutes a "pattern of racketeering activity" in violation of § 1962(c). (Am. Compl. ¶¶ 112, 114, 115.) Plaintiff also alleges that Defendants violated § 1962(d) by conspiring to evade the FDCPA.

To plead a violation of § 1962(c), plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). Plaintiff fails to adequately plead the existence of an enterprise. An enterprise is defined under § 1961(4) as an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." A RICO claim must plead facts plausibly implying the existence of an enterprise, including "a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369-70 (3d Cir. 2010) (quoting *Boyle v. U.S.*, 129 S. Ct. 2237, 2244 (2009)). "In addition, the enterprise must be shown to have an existence 'separate and apart from the pattern of activity in which it engages.'" *U.S. v. Riccobene*, 709 F.2d 214, 221 (3d Cir. 1983).

Plaintiff has failed to allege that Defendants had an existence beyond that necessary to make the allegedly improper calls. Additionally, the "enterprise must have 'some sort of structure . . . within the group for the making of decisions, whether it be hierarchical or consensual. There must

be some mechanism for controlling and directing the affairs of the group on an on-going, rather than ad hoc, basis.'" *Ins. Brokerage*, 618 F.3d at 365 (quoting *Riccobene*, 709 F.2d at 222). Plaintiff has also failed to allege any organizational structure, decisionmaking process, or control mechanism. Because Plaintiff failed to satisfy RICO's standing requirement and to allege a RICO "enterprise," his third cause of action is dismissed with prejudice.

### C. Failure to State a Claim for Intentional Infliction of Emotional Distress

A plaintiff must allege the following elements to assert a claim for intentional infliction of emotional distress ("IIED"): "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress; and (4) the resultant emotional distress was severe." *Brown v. Udren Law Offices PC*, Civ. A. No. 11-2697, 2011 WL 4011411, at *3 (E.D. Pa. Sept. 9, 2011) (citing *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982)).

To state a claim for IIED, the conduct at issue must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987). It is not enough that a defendant acted with criminal or tortious intent, or that he intended to inflict emotional distress. *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citing Restatement (Second) of Torts § 46, cmt. d).

Plaintiff has failed to state a claim for IIED. Berk maintains that Defendants have repeatedly harassed him with phone calls about his ex-wife's debt so that he would pressure her to pay the debt in order to stop the phone calls. (Am. Compl. ¶ 132.) Plaintiff states that Defendants' conduct caused him stress and anxiety, as well as high blood pressure, in part because he "and his former wife

11

continue to be at odds emotionally, and plaintiff does not want to hear from his former wife or anything about her business or financial affairs." (*Id.* ¶¶ 137, 135.) Receiving phone calls about an ex-spouse's debt is not "atrocious" and "utterly intolerable" conduct that constitutes a claim for intentional infliction of emotional distress. Indeed, the alleged conduct in the instant case pales in comparison to the conduct in a recent case in this District, which considered if a debt collection practice could establish a claim for IIED. *Combs v. NCO Fin. Sys., Inc.*, Civ. A. No. 10-5673, 2011 WL 1288686 (E.D. Pa. April 5, 2011). In *Combs*, the defendant allegedly called the plaintiff regarding her sick husband's debt at least five to six times each day, and after the plaintiff's husband died, the contacts increased in frequency and included an email offering her deceased husband a payment plan. Though the defendant's alleged conduct in *Combs* was far more egregious than Chase and ARM's alleged conduct directed toward to Berk, the court in *Combs* found that the plaintiff's "allegations do not rise to the requisite level of outrageousness to state a claim for intentional infliction of emotional distress." *Id.* at *5. Therefore, Defendants' alleged conduct surely does not amount to the outrageousness required for an IIED claim.

### D. Failure to State a Claim for Intrusion of Privacy and Seclusion

A claim for intrusion upon seclusion requires a showing of "conduct demonstrating 'an intentional intrusion upon the seclusion of [a plaintiff's] private concerns which was substantial and highly offensive to a reasonable person, and [must] aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities.'" *Boring v. Google Inc.*, 362 Fed. Appx. 273, 278-79 (3d Cir. 2010) (quoting *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002)).

Pennsylvania has adopted the definition of intrusion upon seclusion as set out in Restatement (Second) of Torts, § 652B. *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1187 (Pa. Super. Ct. 1988). Under this definition, there is no liability for a person who demands payment of a debt unless "the telephone calls are *repeated with such persistence and frequency* as to amount to a course of hounding the plaintiff, that [it] becomes a substantial burden to his existence, that his privacy is invaded." Restatement (Second) of Torts, § 652B cmt. d (emphasis added).

The Court finds that Plaintiff alleges sufficient facts to support a claim for intrusion upon seclusion under Pennsylvania law. Plaintiff alleges that Defendants contacted Plaintiff on approximately twenty or more occasions over two years, at three residences, and on four telephone lines. (Am. Compl. ¶ 1.) Plaintiff also alleges that these calls persisted even after Defendants were advised that Nancy Berk was Plaintiff's former wife and he knew nothing about the alleged debt. (*Id.* ¶ 142.) These allegations are sufficient to support a claim for intrusion upon seclusion. *Compare Desmond v. Phillips & Cohen Assoc., Ltd.*, 724 F. Supp. 2d 562, 568 (W.D. Pa. 2010) (allowing intrusion upon seclusion claim to go to the jury based on debt collector's fourteen calls, four letters, and several messages left on the plaintiff's answering machine, holding that whether the intrusion was "highly offensive to a reasonable person is a question of fact for the jury to decide."), *with Stuart v. AR Res., Inc.*, Civ. A. No. 10-3520, 2011 WL 904167 (E.D. Pa. March 16, 2011) (dismissing intrusion upon seclusion claim despite defendant debt collector's persistent phone calls and profane and abusive language because the of failure to plead the number or substance of calls).

E. **Allegations Against JPMorgan Chase & Co.**

Chase argues that Plaintiff has not asserted any allegations against Chase Co., arguing that parent companies cannot be held liable for the acts of their subsidiaries. The Third Circuit has

emphasized that "mere ownership of a subsidiary does not justify the imposition of liability on the parent." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). Instead, parental liability for a subsidiary's acts is appropriate either when a subsidiary is not a separate and independent corporation, but rather the alter ego of the parent company, or if the subsidiary is an agent for the parent in a specific transaction. *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1476-77 (3d Cir. 1988). To determine if two corporations are separate, courts consider "adequacy of capitalization, overlapping directorates and officers, separate record keeping, payment of taxes and filing of consolidated returns, maintenance of separate bank accounts, level of parental financing and control over the subsidiary, and subsidiary authority over day-to-day operations." *Id.* at 1476.

Chase argues that Berk sets forth no allegations of wrongdoing by Chase Co., but rather he seeks to hold Chase Co. liable for the acts of another. However, Plaintiff alleges both overlapping officers and authority over day-to-day operations, as well as specific actions taken by Chase Co. Berk alleges that he forwarded the Memeger letter to Chase Co.'s general counsel and to a member of the Chase Co. Board of Directors. (Am. Compl. ¶¶ 39, 40.) Plaintiff also alleges that he received a call from Russell, who stated that he was calling at the direction of the Chase Co. general counsel. (*Id.* ¶ 42.) Plaintiff also alleges a letter that he sent to Chase Co. general counsel, which was responded to by Palladino from Chase Auto Finance. (*Id.* ¶¶ 44, 49.) Finally, Plaintiff alleges that the three Chase Defendants all maintain principal offices at the same location. (*Id.* ¶¶ 3-5.) Plaintiff sufficiently alleges actions undertaken either by or at the direction of Chase Co. Thus, the Court denies Chase's motion to dismiss any remaining claims against Chase Co., and Plaintiff's claim for intrusion upon seclusion against Defendants JPMorgan Chase Bank, N.A. ("Chase Bank"), JPMorgan Chase & Co. ("Chase Co.") will remain.

**F.     Motion to Strike Class Allegations**

Motions to strike class allegations are generally resolved after a motion for class certification is filed. The court in *Korman v. The Walking Co.*, 503 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007), held that a motion to strike class allegations is premature if the plaintiff has failed to file a motion for class certification. The court noted that the defendant's motion to strike class allegations is identical to the defendant's opposition to a plaintiff's motion for class certification, yet would be filed while discovery on the issue is still ongoing. *Id.* at 762. While the Third Circuit has not yet addressed this issue, other courts within this District have followed this approach. *See e.g.*, *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673 (E.D. Pa. 2011); *Bell v. Money Res. Corp.*, Civ. A. No. 08-639, 2009 WL 382478 (E.D. Pa. Feb. 13, 2009); *Rosenberg v. Avis Rent A Car Sys., Inc.*, Civ. A. No. 07-1110, 2007 WL 2213642 (E.D. Pa. July 31, 2007).

In the instant case, the class allegations raise a matter of law, and it is proper for the Court to address it at the pleading stage. Plaintiff seeks to bring a class action under RICO on behalf of "persons who have no auto loan with Chase Bank or Chase Auto Finance but who have received more than one telephone call from ARM and/or Chase concerning the auto loan debt to Chase of third parties." (Am. Compl. ¶¶ 79, 128.) However, as discussed above, Plaintiff failed to adequately plead the existence of an enterprise prohibited by 18 U.S.C. § 1962 *et. seq.* Therefore, he has failed to assert a claim under RICO in a representative capacity. The Court will grant Defendants' motion to strike class allegations and dismiss Berk's fourth cause of action, given Plaintiff's failure to adequately plead the existence of an enterprise to set forth a cause of action under RICO.

## IV. CONCLUSION

For the reasons stated above, Plaintiff has failed to state a claim under the FDCPA against Chase, under RICO against Chase and ARM both on his own behalf and on behalf of a class of similarly situated people, and under state law for intentional infliction of emotional distress. The Court will therefore dismiss those claims against Defendants. An Order consistent with this Memorandum will be docketed separately.