**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HAROLD R. BERK,** | : | |
| **Plaintiff**, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JPMORGAN CHASE BANK,** | : | |
| **N.A., et al.,** | : | **No. 11-2715** |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                    **December 13, 2011**

Pro se Plaintiff Harold R. Berk brings this action against Defendants JPMorgan Chase Bank, N.A. ("Chase Bank"), JPMorgan Chase & Co. ("Chase Co."), and Chase Auto Finance Corporation (collectively, "Chase") and Accounts Receivable Management, Inc. ("ARM"), alleging a violation of the Fair Debt Collection Practices Act ("FDCPA") and intrusion upon his seclusion. Presently before the Court is Plaintiff's second motion to amend the amended complaint to add an additional cause of action. For the reasons set forth below, the Court will deny Plaintiff's motion to amend with prejudice.

## I.      BACKGROUND

Beginning in 2009, Harold Berk started receiving telephone calls from individuals identifying themselves as calling on behalf of "Chase Auto Loans" regarding an alleged auto loan of Nancy Berk. (Am. Compl. ¶ 16.) Harold and Nancy Berk divorced in 1998. (*Id.*) Though Harold had no knowledge of Nancy's auto loan, he continued to receive telephone calls from 2009 through early 2011 about her loan. (*Id.* ¶¶ 16, 18.) Plaintiff estimates having received five calls in 2009, twenty

calls in 2010, and five calls in 2011. (*Id.* ¶¶ 23-25.) He received these calls at three different homes and on four different phone lines. (*Id.* ¶¶ 19-21.) On every occasion, Berk told the callers that he had no knowledge of the matter and to stop calling. (*Id.* ¶ 26.)

Beginning in November 2010, Berk began threatening to report the callers to the U.S. Attorney's Office. (*Id.* ¶ 36.) On February 26, 2011, Plaintiff sent a letter regarding the phone calls to Zane David Memeger, U.S. Attorney for the Eastern District of Pennsylvania, stating that a "major bank is violating the Fair Debt Collection Act, privacy acts and other laws." (Am. Compl. Ex. A [Memeger letter].) The letter requested that the U.S. Attorney investigate the matter. (*Id.*) Berk also sent the Memeger letter to individuals at Chase, including Stephen M. Cutler, general counsel of Chase Bank and Chase Co., and James Crown, member of the Board of Directors of Chase Co. (*Id.*) On March 3, 2011, Michon Suter, executive specialist for Chase Auto Finance Executive Office, sent a letter to Berk informing him that his phone number was "erroneously associated with a Chase Auto Finance account," that it "ha[d] been removed," and that he "should no longer receive any calls from Chase Auto Finance." (Am. Compl. Ex. C [Suter letter]). Suter also gave Berk his direct number to contact him should Berk receive more calls. (*Id.*) On March 7, 2011, Jack Russell, a representative of Chase, called Plaintiff, indicating that he was calling "at the specific direction" of Cutler, and Berk sent a follow-up letter to Cutler on March 14, 2011 recounting the conversation with Russell. (Am. Compl. ¶¶ 41, 42, 44.) Berk also received a letter dated March 16, 2011 from Concetta Palladino, executive specialist for the Chase Auto Finance Executive Office indicating receipt of Berk's March 14 letter. (*Id.* ¶ 49.) On March 28, 2011, Jeffrey Levine, general counsel for Chase Auto Finance, called Berk and listed all of the calls that had been made to Berk's phone numbers. (*Id.* ¶ 51.) In a subsequent email, Levine stated that Chase could not find any records

of having spoken with Berk, but only of having left messages, but requested additional information to further investigate the alleged contacts. (*Id.* ¶ 52.) On March 30, 2011, Levine wrote to Plaintiff and stated that Chase's investigation found no records indicating that Chase Auto Finance made direct contact with him. (Am. Compl. Ex. F [Levine letter].) Levine also identified ARM as a debt collector for Chase Auto Finance, and stated that Chase had notified ARM of the situation and requested that no further attempts be made to contact him. (*Id.*)

Having learned of the existence of ARM, Plaintiff wrote to ARM on April 1 and April 5, 2011, seeking confirmation of contacts with him, forwarding the Memeger letter, stating that ARM never identified itself in its calls, and alleging FDCPA violations and harassment. (Am. Compl. ¶¶ 58-60; Am. Compl.  Ex. G [Berk letter to ARM, April 1, 2011].) On April 5, 2011, Thomas Novak, ARM's in-house counsel, informed Berk that ARM's review found no violations of the law. (Am. Compl. Ex. I [Novak letter].)

Plaintiff filed his initial complaint on April 22, 2011, and he filed an amended complaint on July 13, 2011 alleging that Chase and ARM violated the FDCPA and the Racketeer Influenced and Corrupt Organizations Act ("RICO") and intentionally caused him emotional distress and intruded upon his seclusion. Berk also sought to represent a class of individuals purportedly harmed by Defendants' actions. On September 26, 2011, the Court dismissed all of Berk's claims except for an FDCPA claim against ARM and an intrusion upon seclusion claim against all Defendants.

On November 7, 2011, in response to a discovery request, Chase produced to Berk a "memory stick containing a wiretap of plaintiff by Jack Russell, a Chase employee, done under the direction of the General Counsel of Chase." (Second Mot. for Leave to Amend the Am. Civil Compl. ¶ 1.) The recording was of the telephone conversation between Plaintiff and Russell that had

occurred on March 7, 2011. The telephone call was initiated by Russell "and where plaintiff did not know it was being recorded and plaintiff gave no consent." (*Id.*) Plaintiff subsequently filed a motion for leave to file a second amended complaint to add a cause of action under the Electronic Communications Privacy Act.

## II.     STANDARD OF REVIEW

Motions to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15. However, the decision to grant or deny a motion for leave to amend a pleading is within a district court's discretion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Freedom Int'l Trucks, Inc. of N.J. v. Eagle Enters., Inc.*, 182 F.R.D. 172, 174 (E.D. Pa. 1998) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). A court can refuse to permit amendment based on undue delay, bad faith, prejudice to the opposing party, or futility of the amendment. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). An amendment is futile if it would fail to state a claim on which relief could be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434.

## III.    DISCUSSION

Plaintiff's request to amend his amended complaint to add a claim against the Chase Defendants for violation of the Electronic Communications Privacy Act of 1986 ("Federal Wiretap Act"), 18 U.S.C. § 2511(2)(d), is based on an alleged recording of a telephone conversation between Chase employee Jack Russell and Plaintiff without Plaintiff's knowledge or consent on March 7, 2011. (Mot. for Leave to File Am. Compl. Ex. A [Proposed Eighth Cause of Action].) Because

4

amendment would be futile, the Court denies the motion.

The Federal Wiretap Act imposes sanctions against anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Federal Wiretap Act also sets out a private right of action for an individual whose "wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" the Act. 18 U.S.C. § 2520(a). The Third Circuit has held that "private parties can bring a cause of action for damages and injunctive relief where aggrieved by a defendant's violation of § 2511(1)(a)." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 167 (3d Cir.2005).

Nonetheless, Plaintiff cannot state a claim under the Federal Wiretap Act against Chase. The statute prohibits an interception that is "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Courts have interpreted this provision to require that the "interceptor intend to commit a crime or tort independent of the act of recording itself." *Caro v. Weintraub*, 618 F.3d 94, 96 (2d Cir. 2010) (collecting cases).

In the case at bar, Plaintiff alleges that the purpose of the telephone call was to respond to his concerns about privacy invasions and FDCPA violations. (Proposed Eighth Cause of Action ¶ 161.) While Plaintiff attempts to allege that the recording of the telephone conversation was in furtherance of Chase's intrusion upon his seclusion, his claim fails to satisfy the requirement that the interception of the telephone call be an independent crime or tort. (*Id.* ¶¶ 163, 166). As opposed to Pennsylvania's other privacy torts, the tort of intrusion upon seclusion occurs through the act of the invasion of privacy or the interception itself, and not as a result of any publication of private

5

information. *See, e.g.*, *Marks v. Bell Tel. Co. of Pa.*, 331 A.2d 424, 432 (Pa. 1975) ("While some torts, including some forms of invasion of privacy, require publication as an element of the offense, there is no such requirement for an action for intrusion upon another's seclusion."). "Nothing more is required after the interception is made for liability to attach based on this tort. All that is required is that the tortfeasor intended to commit the act that was the basis for the invasion." *Caro*, 618 F.3d at 101. Berk's allegation of the recorded telephone conversation with Russell may on its own state a claim for intrusion upon his seclusion under Pennsylvania law, but it does not create liability under the Federal Wiretap Act because it fails to satisfy the independent tortious intent requirement. Berk does not and cannot allege an independent tort that could provide the basis for the tortious intent necessary to bring a claim under the Federal Wiretap Act. Therefore, the Court denies Berk leave to amend with prejudice.

## IV.    CONCLUSION

The Court denies Plaintiff's motion for leave to amend the amended complaint because the Plaintiff would fail to state a claim for relief under the Federal Wiretap Act. An Order consistent with this Memorandum will be docketed separately.